1  Paul Kingston, appearing in *propria persona*
2  11 Silvercreek Ln, Ballwin, MO 63011
3  Phone: (314)601-4662
4  E-mail: Picasso.dilly@gmail.com

**FILED**
SEP 2 2 2025
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ,United States of America<br><br>　　　　Plaintiff,<br><br>v.<br><br>,Paul Kingston<br><br>　　　　Defendant. | **Case Nos.** U.S. District - 2:25-cr-00047-DC<br><br>Magistrate – 3:24-po-00182-DMC<br><br>REPLY TO APPELLEE BRIEF<br><br>Hearing Date: TBD under the Honorable District Judge Dena M Coggins |

## I TABLE OF CONTENTS

I – Table of Contents　　　　　　　　　　　　　　　　P 1

II – Table of Authorities　　　　　　　　　　　　　　　P 2

III – Rebuttals　　　　　　　　　　　　　　　　　　　P 3

　　　(A) When the issues on appeal were raised　　　　[P 3, L 3]

　　　(B) The Rainbow Closure violated "free exercise"　[P 4, L 6]

　　　(C) The Rainbow Closure violated free speech　　 [P 5, L 14]

　　　(D) The Rainbow Closure violated the APA　　　　[P 6, L 17]

IV – Conclusion　　　　　　　　　　　　　　　　　　P 8

1 KINGSTON- Reply to Appellee Brief

## III TABLE OF AUTHORITIES

COURT CASES

District Courts

*U.S. v Aglialoro, et al, 2001 WL 209912, (D. Or. 2001)* cited on p 4

*U.S. v White, case no: 3:96-cr-05177-JKA-1, (W.D. Wa. 1996)* cited on pp 4, 6

Circuit Courts

*Animal Protection Institute of America v. Hodel, 860 F.2d 920, 927 (9th Cir. 1988)* cited on pp

*Black v. Arthur, 201 F.3d 1120, 1123 (9th Cir. 2000)* cited on p 5

Supreme Court

*Employment Division v. Smith, 494 U.S. 872 (1990)* cited on p 4-5

*Madsen v. Women's Health Center, Inc., 512 U.S. 753 (1994)* cited on p 6

STATUTES

*5 USC § 706, "Administrative Procedures Act"* cited on p 6

Other Authorities

*FSH 5309.11, "Law Enforcement Handbook,"* cited on p 7

2 KINGSTON- Reply to Appellee Brief

## III REBUTTALS

### (A) The issues raised on appeal were brought before the Magistrate and even had they not been, the "line of arguments" made in my appellant brief would not be "waived"

To briefly address the government's contentions that (1) the issues raised in my appellant brief weren't brought before the Magistrate, and (2) this means those "line of arguments" were "waived"-

(1)- I point out that my appellant brief meticulously documents precisely when and how concerns about my free exercise of religion, right to peacefully assemble for expressive purposes and allegations regarding the Rainbow Closure being "arbitrary and capricious" (*See e.g.*, Appellant Brief, Doc. 57 (P 8, L 12-19; P 8, L 25 thru P 9. L 1; P 9, L 9-15)

(2)- Citing *Animal Protection Institute of America v. Hodel, 860 F.2d 920, 927 (9th Cir. 1988)*, the government claims that a "failure to raise issue below bars consideration on appeal" (*See* Appellee Brief, Document 61, P 6, footnote #4), but as is stated within that very opinion, while it does state "Federal appellate courts <u>generally</u> do not consider issues first raised on appeal" *Hodel* (emphasis added), it is clarified that that-

> "However, we will review an issue for the first time on appeal under certain circumstances, such as when the issue is a legal one, not necessitating additional development of the record, see *In re Howell, 731 F.2d 624, 627 (9th Cir.), cert. denied, 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984)*; or when review will prevent "manifest injustice," see *Lien Ho Hsing Steel Enterprise Co. v. Weihtag, 738 F.2d 1455, 1461 (9th Cir.1984)*, or when there is "clear error," see *Aguon v. Calvo, 829 F.2d 845, 848 (9th Cir.1987)*" *Ibid*

While my appellant brief makes some mention of matters which followed my trial,

the arguments it presents are based entirely on what is on the record, requiring no "additional development." And to allow the violation of constitutional protected rights to free exercise of religion and assembly for expressive purposes is a clearly "manifest injustice," which this court must act to prevent.

### (B) The Rainbow Closure directly targeted the Free Exercise of participants in the Prayer for Peace in an overbroad manner without a compelling government interest.

The government claims that the Rainbow Closure was "neutral" because it "applied to everyone, regardless of belief or purpose," claiming that "It's justification… was wholly unrelated to religion" (Document 61, P 4, L 22-23), but this argument falls apart under the lightest scrutiny. To begin with, while it "applied to everyone," the area of the closure was the specific location where the Rainbow Gathering, "a group- numbering in the hundreds and projected to reach thousands" (*Ibid*, P 1, L 22-23), was happening. After stating this event necessitates the Rainbow Closure, the government then has the audacity to then claim that this Prayer for Peace was "wholly unrelated" to the "justification" for it.

The Rainbow Closure is no more content neutral than the Forest Closures issued against protestors to logging operations in *U.S. v Aglialoro, et al, 2001 WL 209912, (D. Or. 2001)* and *U.S. v White, case no: 3:96-cr-05177-JKA-1, (W.D. Wa. 1996)*, which were both found to be unconstitutional despite being "applied to everyone, regardless of belief or purpose" (Document 61, P 4, L 22).

It is illuminating that within *Employment Division v. Smith, 494 U.S. 872 (1990)*- one of the cases the government cites- the Supreme Court makes a distinction between "conduct required by… religion" which was "not prohibited by law," and the taking of a controlled substance, which was prohibited by law. The court emphasized, "We held that distinction to be critical" *Ibid*. Prior to the Rainbow Closure, the Rainbow Gathering and Prayer for Peace was not an illegal event. To attempt to apply the analysis of *Smith* requires circular reasoning that the Rainbow

Closure was a permissible burden on the exercise of religion because of the prohibitions enacted by it.

The government also cites *Black v. Arthur, 201 F.3d 1120, 1123 (9th Cir. 2000)*, a case centered on permitting regulations, because it also involves Rainbow Gathering participants- but as the Ninth Circuit stated, when issuing their ruling-"This case does not present, and we <u>do not decide</u>, whether the Forest Service's group permitting process has been or will be unconstitutionally applied to the Rainbow Family" (emphasis added).

The government then claims the Rainbow Closure places "no substantial burden" on the Prayer for Peace around which the event is centered or my participation in it, because it could "relocate to a different part of the Forest" (Document 61, P 5, L 5-9)- but as the Rainbow Closure Order was clearly targeted at the event, there's no reason to believe it wouldn't have faced another Forest Closure if it did "relocate." The number of participants underlies every reason given for the Rainbow Closure and relocation doesn't change that number.

### (C) The Rainbow Closure directly targeted expressive activity, it did not serve a significant government interest, and it burdened substantially more speech than necessary.

The government's argument that the Rainbow Closure was not targeted at the Rainbow Gathering is no less fallacious when the event is considered as an expressive assembly, so I shall not repeat my arguments here. But there are a few points I wish to address directly-

The government claims that the Rainbow Closure Order's "neutrality of purpose is underscored by the fact that it would have applied equally to any large group- whether religious pilgrims, political demonstrators or recreational campers- who chose to occupy that vulnerable site" (Document 61, P 5, L 23-25)- and while it is technically true that any of the aforementioned group which spontaneously appeared at the precise location of the 2025 Rainbow Gathering may also have been subject to the Rainbow Closure- the implied claim that if group of devout Christians had chosen that site for a pilgrimage, a similar Forest Closure would have been issued

5 KINGSTON- Reply to Appellee Brief

1  is highly dubious and I challenge the government to produce any record of that location (or even
2  some similar location within any California National Forest) being closed due to it's
3  "vulnerability" precisely when a major expressive event is happening there.

4        The government also states that narrow tailoring only requires the Rainbow Closure
5  "simply not burden substantially more speech than necessary" (*Ibid,* P 6, L 6-9). The Rainbow
6  Closure fails to meet this standard. In Chris Carlton's memo, it is estimated that "up to 10,000
7  individuals" will be participating in the Rainbow Gathering (Document 11, P 13, "Exhibit A").
8  But at the July 4 peak of the event, the Forest Service estimates 1756 participants (Document 11,
9  P 24, "Exhibit D"). This measurably chilling effect of the Rainbow Closure clearly represents a
10 substantially greater burden on expressive activity than was "necessary."

11       Finally, the government claims that the analysis of *Madsen v. Women's Health Center,*
12 *Inc., 512 U.S. 753 (1994)* does not apply because *Madsen* concerns an injunction against
13 disruptive protestors, not a Forest Closure targeting an expressive assembly. But the Western
14 District of Washington found a similar Forest Closure (Special Closure Order No. 96-902-29
15 issued February 12, 1996) to be "violative of the standard set forth in *Madsen*" *U.S. v White*.
16 Clearly, that standard can be applied to a Forest Closure.

17
18       **(D) The Rainbow Closure runs afoul of the Administrative Procedures Act**
19

20       The government makes little response to the various grounds for finding the Rainbow
21 Closure to be unlawful under *5 USC § 706* beyond simple denial. No significant argument or
22 evidence against the assertions in my appellate brief are made. But they do spend some time
23 addressing the charge that it was "arbitrary and capricious."

24       Throughout their brief, the government repeatedly makes claims about documentation and
25 consideration that are wholly unsupported and even contradicted by what is on the record. They
26 assert that "Officials documented fire hazards, unsafe traffic conditions, health threats from waste
27 disposal, and damage to grazing and cultural sites" (Document 61, P 7, L 5-6). Documented
28 where? It certainly wasn't documented in anything that was turned over to my attorney during the

process of discovery[1]. The only documentation of these concerns on the record is a memo written by Plumas Forest Supervisor, Chris Carlton.

The government claims the Chris Carlton "had to act, and after thorough deliberation, he promulgated the Closure Order" (*Ibid*, P 7, L 7-8). Where is the record of this "thorough deliberation?" My Motion to Vacate (Document 46) is largely based on the fact that despite the requirements of *FSH 5309.11*, no such record appears to have been created.

---

[1] It should be noted that the Chris Carlton's memo was not obtained for my defense through my discovery process, but because a similarly situated defendant, Karin Zirk, shared materials obtained through her discovery with me (Document 11, P 1, L 27/28)

7 KINGSTON- Reply to Appellee Brief

## IV CONCLUSION

The government's defense of the Rainbow Closure fails because it relies on assertions of fact which are not backed (and in some parts are contradicted) by the evidence on the record, it relies on circular reasoning and other fallacious arguments, and it even contradicts itself.

Therefore, the court must find the Rainbow Closure to be unconstitutional and unlawful, overturning my conviction for violation of it.

Respectfully submitted,

Paul Kingston,

x PAUL KINGSTON

Date: 9-17-2025